# IN THE COURT OF APPEALS OF IOWA

No. 22-0979
Filed August 31, 2022

**IN THE INTEREST OF D.B. and D.B.,**
**Minor Children,**

**M.B., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, District Associate Judge.

　　A father appeals the termination of his parental rights to two sons.
**AFFIRMED.**

　　Jessica R. Noll of Deck Law PLC, Sioux City, for appellant father.

　　Thomas J. Miller, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for appellee State.

　　Jesse Scott, Sioux City, guardian ad litem for minor children.

　　Molly Vakulskas Joly, Sioux City, attorney for minor children.

　　Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

"It was unimaginable how powerful the father's addiction is for him." That sentence sums up the juvenile court's order terminating parental rights. The father, Michael, appeals the termination order, trying to preserve his parental rights to two sons, both born in 2017.[1] He challenges the statutory grounds and asserts termination was not in the boys' best interests because of their close parent-child relationships. In the alternative, Michael asks to postpone permanency for six months so that he can continue substance-abuse treatment. The juvenile court recognized a "very strong bond" between the boys and their father, but the counterbalance was the father's uncontrolled addiction to methamphetamine. After reviewing the full record, we reach the same conclusions as the juvenile court and thus affirm.[2]

## I.      Facts and Prior Proceedings

Parental drug use in 2018 prompted this family's first contact with the Iowa Department of Human Services.[3] The court adjudicated then nine-month-old De.B. and eighteen-month-old Di.B. as children in need of assistance (CINA) because both Michael and Kathleen used methamphetamine while caring for them.

---

[1] The mother, Kathleen, sought to join the father's petition, but the supreme court dismissed her appeal for failure to comply with the appellate rules.

[2] We review termination decisions de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *Id.* The State must present clear and convincing evidence to support the grounds for termination. *Id.* That level of proof means we harbor no "serious or substantial doubts" about the correctness of the legal conclusions drawn from the evidence. *Id.* (citations omitted).

[3] After a recent merger with the Department of Public Health, the department is now called the Iowa Department of Health and Human Services. So we will use the acronym DHHS.

After more than a year of services, the court granted Michael sole custody of the children because Kathleen failed to satisfy court directives. The court dismissed the CINA proceedings in November 2019.

But Michael continued to allow Kathleen access to the children, and both parents kept abusing drugs. So again, the court adjudicated the boys as CINA in March 2020. Although he tested positive for methamphetamine in April 2020, under a DHHS safety plan, the boys stayed in Michael's or briefly in their aunt's care until February 2021. Then, the court approved the DHHS request to remove the children from his care because he refused to drug test and avoided contact with service providers. After their removal, Michael was inconsistent in visiting his sons. He also failed to consistently attend drug treatment. In September 2021, he received a diagnosis of methamphetamine use disorder, severe. That December, he was arrested for making a false report to police after an argument with Kathleen at his home. In January 2022, he tested positive for methamphetamine, amphetamine, marijuana, and MDMA.[4] The recovery center recommended intensive outpatient treatment. His counselor believed he had a high risk of relapse.

That same month, the State petitioned to terminate parental rights. Seeing the writing on the wall, Michael restarted outpatient substance-abuse treatment in February. Noting his lack of progress, his counselor referred Michael for inpatient services in March. Michael did not act on the referral until mid-April, one week

---

[4] The lab report noted that MDMA is also known by the name ecstasy. But Michael denied using a separate drug, saying: "[I]t's whatever the meth is cut with, that's why the ecstasy is in there."

before the scheduled termination hearing.  Because he had just started inpatient treatment, he participated in the hearing by telephone.  He testified: "I'm trying to fix myself and get better so I can get back to my children."  When asked why it took fourteen months for him to make a serious effort to stay clean, he responded: "I was in active addiction.  I wasn't thinking straight."

The juvenile court doubted Michael's newfound commitment to sobriety: "Everything to which he testified today were just words.  There has been no action." Citing Michael's history of inaction, the court terminated his parental rights on two grounds: Iowa Code section 232.116(1) (2022), paragraphs (f) and (*l*).  He now appeals.

## II.     Analysis

We generally analyze termination cases by asking three questions.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  First, did the State prove a ground for termination under Iowa Code section 232.116(1)?  *Id.* at 472–73.  Second, if so, is the termination in the children's best interests measured by the criteria in section 232.116(2)?  *Id.*    And third, is there a countervailing factor in section 232.116(3) that would counsel against termination?  *Id.*

### A.  Statutory Grounds

When the juvenile court bases its termination decision on more than one paragraph of section 232.116(1), we may affirm on any ground supported by clear and convincing evidence.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  Today we focus on paragraph (*l*).

To satisfy section 232.116(1)(*l*), the evidence must show:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

*In re L.H.*, 949 N.W.2d 268, 271 (Iowa Ct. App. 2020).[5]

Michael contests the second and third elements. He points to his participation in inpatient treatment and asserts the State did not prove that the boys, by then ages four and five, could not be returned to his care in a reasonable time.

Michael's argument cannot carry the day. At several points in the CINA case, he was diagnosed with a severe substance-abuse-related disorder. And his counselors made repeated recommendations for intensive outpatient or inpatient treatment. As for his prognosis, at the March 2022 permanency hearing, Michael admitted that in the past year he was discharged from treatment "too many" times.

---

[5] In May 2022, when the juvenile court issued its termination order, the second element required the State to prove the parent had "a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in functional impairment." *See* Iowa Code §§ 125.2(15), 232.116(1)(*l*)(2); *L.H.*, 949 N.W.2d at 271. But after a legislative amendment effective July 1, 2020, that disorder may be proven by the parent's continued and repeated substance use through the case and the parent's refusal to obtain a substance-abuse evaluation or treatment after being given the opportunity to do so. Iowa Code § 232.116(1)(*l*)(2)(b).

To what did he attribute his inconsistency? He testified: "Sometimes I'm tired. Sometimes I just don't feel like going."

Like the juvenile court, we are not reassured that one month later, as Michael had just entered inpatient treatment, he could turn around more than a decade of methamphetamine addiction in short order. Michael's active addiction poses a danger to himself and his sons when he's caring for them. *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014); *In re J.P.*, No. 19-1633, 2020 WL 110425, at \*2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). Considering the boys are just on the cusp of starting school, their need for a permanent home is paramount. The State offered clear and convincing evidence that Michael had a high risk of relapsing even after substance-abuse treatment. This pessimistic prognosis satisfied element (3) of paragraph (*l*).

## B. Best Interests/Close Bond

Michael next argues termination is not in the children's best interests because they have a "very close relationship" with him. This argument melds Iowa Code subsection 232.116(2) with subsection (3)(c). We will address each provision.

In assessing best interests, we consider the children's safety, the best placement for furthering their long-term nurturing and growth, as well as their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Security and the need for a permanent home mark the "defining elements" of children's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring

specially).  The record shows that Michael can neither now nor soon provide Di.B. and De.B. with the security and stability they need for healthy nurturing and growth. Because their tender years have been marred by unsafe parenting and upheaval, termination promises a more certain future.  On this record, the State satisfied the best-interests requirement.

Turning to section 232.116(3), the burden shifts to Michael to show that a permissive factor weighs against termination.  *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).  He argues that paragraph (c) applies because of his tight-knit connection with the boys.  That provision allows a court to preserve parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship."  Iowa Code § 232.116(3)(c).  By all accounts, Michael has a very close bond with his sons.  The foster mother told the court that "they miss their dad" between visits.  Likewise, the Court Appointed Special Advocate (CASA) reported that the boys love their father and want to see him.  But the CASA also noted that the boys had negative behaviors after visits with their father.

When considering this factor, we focus on whether the children will be "disadvantaged by termination" and whether that disadvantage outweighs the parent's inability to meet their needs.  *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).  While severing the legal relationship with their father will be hard on these boys, that disadvantage is outweighed by our concerns about his ability to be a safe, drug-free parent.  Michael cannot meet his burden on this permissive factor.

**C. Deferral of Permanency**

Finally, Michael contends he should be allowed six months more to achieve reunification. He again points to his inpatient treatment, saying he "only needed a little bit more time to demonstrate stability and sobriety."

At its discretion, a court may defer permanency if it can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal" of the children from their home will no longer exist after the six-month reprieve. Iowa Code § 232.104(2)(b); *see also In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Although Michael took a step in the right direction in starting residential treatment, like the juvenile court, we find deferring permanency would not be a good option for these children. As their guardian ad litem (GAL) told the court, Michael does well when he has structure, but

> outside of the structure is when things fall apart. . . . I don't believe these children need to wait longer for that structure, for that permanency. . . . [H]e has spent the past year starting and stopping and starting and stopping. And it's not fair to these children to make them continue to wait.

We accept the GAL's position.

In the end, severing legal ties with their father will enable these children to settle into a more structured and stable routine.

**AFFIRMED.**